IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DONNAK SAKMAR                      )
                                   )
            Plaintiff,             )
                                   )
    -vs-                           )            Civil Action No. 18-1077
                                   )
ANDREW M. SAUL,                    )
                                   )
        Defendant.                 )

AMBROSE, Senior District Judge.

## OPINION AND ORDER

## Synopsis

Plaintiff Donna Sakmar ("Sakmar") seeks judicial review of the Social Security Administration's denial of her claim for a period of disability and disability insurance benefits ("DIB").[1] Sakmar alleges a disability onset date of January 5, 2015. (R. 15) The ALJ denied her claim following a hearing at which both Sakmar and a vocational expert ("VE") appeared and testified. Sakmar then appealed. Before the Court are the parties' cross-motions for summary judgment. *See* ECF Docket Nos. 15 and 17. For the reasons set forth below, the ALJ's decision is affirmed.

## Opinion

1. Standard of Review

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g) and 1383(c)(3)(7). Section 405(g) permits a district court

---

[1] The ALJ determined that Sakmar meets the insured status requirements of the Social Security Act through June 30, 2018. (R. 18)

1

to review the transcripts and records upon which a determination of the Commissioner is based, and the court will review the record as a whole. See 5 U.S.C. § 706. When reviewing a decision, the district court's role is limited to determining whether the record contains substantial evidence to support an ALJ's findings of fact. *Burns v. Barnhart,* 312 F.3d 113, 118 (3d Cir. 2002). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Determining whether substantial evidence exists is "not merely a quantitative exercise." *Gilliland v. Heckler,* 786 F.2d 178, 183 (3d Cir. 1986) (*citing Kent v. Schweiker,* 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." *Id.* The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979); *Richardson,* 402 U.S. at 390, 91 S. Ct. 1420.

Importantly, a district court cannot conduct a *de novo* review of the Commissioner's decision, or re-weigh the evidence of record; the court can only judge the propriety of the decision with reference to the grounds invoked by the Commissioner when the decision was rendered. *Palmer v. Apfel,* 995 F.Supp. 549, 552 (E.D. Pa. 1998); *S.E.C. v. Chenery Corp.,* 332 U.S. 194, 196-7, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). Otherwise stated, "I may not weigh the evidence or substitute my own conclusion for that of the ALJ. I must defer to the ALJ's evaluation of evidence,

assessment of the credibility of witnesses, and reconciliation of conflicting expert opinions. If the ALJ's findings of fact are supported by substantial evidence, I am bound by those findings, even if I would have decided the factual inquiry differently." *Brunson v. Astrue*, 2011 WL 2036692, 2011 U.S. Dist. LEXIS 55457 (E.D. Pa. Apr. 14, 2011) (citations omitted).

II. <u>The ALJ's Decision</u>

As stated above, the ALJ denied Sakmar's claim for benefits. More specifically, the ALJ found that Sakmar is the unmarried widow of the deceased insured worker and has satisfied the non-disability requirements for disabled widow's benefits. (R. 18) At step one, the ALJ determined that Sakmar had not engaged in substantial gainful activity since the alleged onset date. (R. 18) At step two, the ALJ concluded that Sakmar suffers from the following severe impairments: osteoarthritis and asthma. (R. 18-19) At step three, the ALJ concluded that Sakmar does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R.19) Between steps three and four, the ALJ found that Sakmar has the residual functional capacity ("RFC") to perform light work with certain restrictions. (R. 19-29) At step four, the ALJ found that Sakmar is unable to perform past relevant work. (R. 29) At the fifth step of the analysis, the ALJ concluded that, considering Sakmar's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform. (R. 29-30)

III. <u>Discussion</u>

Although Sakmar presents several issues on appeal, I need only consider one – whether her RFC is consistent with the ability to perform the position of a gate guard.[2] As stated above, the ALJ found that Sakmar was capable of performing light work, subject to certain restrictions. The restriction at issue here is that Sakmar "can only occasionally work where there is dust, fumes, gases and pulmonary irritants." (R. 19-20)

Sakmar contends that the Dictionary of Occupational Titles ("DOT") provides that the duties of a gate guard include frequent exposure to "other environmental conditions." *See* ECF Docket No. 16, p. 6. According to Sakmar, the Selected Characteristics of Occupations ("SCO"),[3] defines "'other environmental conditions' to include, but not be limited to, fire and smoke fumes from helping rescue people from buildings on fire, fire and smoke fumes from demolition buildings nearby, or being subjected to bodily injury or death from law violators." *Id.*, p. 6. Given her restrictions to only occasional work where there is dust, fumes, gases and pulmonary irritants, Sakmar urges that the position of gate guard is incompatible with her RFC.

I disagree. As the Government urges, Sakmar omits a vital word from the definition of "other environmental conditions" – "may."[4] This distinction is vital. Here, in formulating the hypothetical question, the ALJ explained to the VE that:

> [t]his hypothetical individual can work in settings where there is an excessive amount of dust, odors, fumes and pulmonary irritants, but no more than occasionally.

---

[2] Sakmar contends that the RFC fashioned by the ALJ is incompatible with the remaining positions identified by the vocational expert – those of greeter and information clerk. The Commissioner "concedes that an individual with Plaintiff's residual functional capacity could not perform two of the jobs that the ALJ identified, greeter and information clerk." *See* ECF Docket No. 18, p. 1. As such, I need not address this contention.

[3] The SCO is the DOT's companion publication.

[4] The SCO defines other environmental conditions as follows: "These **may** include, but are not limited to …." U.S. Dep't. of Labor, Dictionary of Occupational Titles, App'x. D at para. 14. (emphasis added).

(R. 66, 67, 68-69). "A VE or VS, or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the DOT." SSR 00-4p, 2000 WL 1898704. Here, armed with such specialized knowledge, the VE indicated that such an individual could perform the duties of a gate guard and that over 20,000 such jobs exist in the economy.[5] The ALJ also testified that his testimony was consistent with the DOT. (R. 70-71) As such, I find that the ALJ followed the dictates of SSR 00-4p: (1) the VE testified regarding the requirements of a job which Sakmar could perform; and (2) the ALJ asked the VE whether his testimony was consistent with the DOT. Consequently, because substantial evidence of record supports the ALJ's findings, I find no basis for remand.

---

[5] Sakmar challenged the sufficiency of the number of available jobs but only with respect to the number of jobs available for the positions of "greeter" and "information clerk." Regardless, 20,000 jobs would constitute a "significant" number of jobs under the Act. *See e.g., Taskila v. Comm'r. of Soc. Sec., 819 F.3d 902, 905 (6th Cir. 2016)* (finding that 6,000 jobs in the national economy is significant)

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DONNA SAKMAR                              )
            Plaintiff,                    )
                                          )
    -vs-                                  )        Civil Action No. 18-1077
                                          )
ANDREW M. SAUL,                           )
                                          )
        Defendant.                        )

AMBROSE, Senior District Judge.


## ORDER OF COURT

Therefore, this 2nd day of July, 2019, it is hereby ORDERED that the Plaintiff's

Motion for Summary Judgment (Docket No. 15) is DENIED and the Defendant's Motion

for Summary Judgment (Docket No. 17) is GRANTED. It is further ORDERED that the

ALJ's decision is AFFIRMED. This case shall be marked "Closed" forthwith.

                            BY THE COURT:

                            /s/ Donetta W. Ambrose
                            Donetta W. Ambrose
                            United States Senior District Judge